Lolddeoeoeeedoedoedoooeoeeoeo,..sldklkfrkendfsmnhnhnIN THE UNITED
STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| AGIM (nmn) ZENDELI, | ) Case No. 10-60669 |
| | ) |
| Debtor. | ) |

## ORDER GRANTING THE UNITED STATES' MOTION TO DISMISS
## DEBTOR'S OBJECTION TO CLAIM

The Debtor objects to the proof of claim filed by the Internal Revenue Service which asserts personal liability for tax obligations of several entities with which the Debtor was involved or associated. It appears that, in addition to the Debtor, the IRS seeks to hold other individuals responsible for some or all of such tax obligations. The IRS' claim includes secured, priority, and unsecured portions. Although I do not decide so here, based on the pleadings, it would appear that the majority of the secured and priority tax assessments may be civil penalties for trust fund taxes, of the kind described in 26 U.S.C. § 6672[1] and 11 U.S.C. § 507(a)(8)(C).[2] If so, they would be

---

[1] Section 6672 of the Internal Revenue Code provides that "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax. . . shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected."

[2] Section 507(a)(8)(C) of the Bankruptcy Code gives priority to debts for taxes "which [were] required to be collected or withheld for which the debtor is liable in whatever capacity."

nondischargeable under § 523(a)(1)(A) of the Bankruptcy Code.[3]

Section 502(a) permits parties in interest to object to claims.[4] Although not clear from the Debtor's objection to the IRS' claim, the subsequent pleadings and attachments indicate that the Debtor denies liability as to some of the tax assessments made by the IRS in its claim, but, apparently, not all of them.

The IRS asserts that the Debtor's objection to its claim should be dismissed for lack of standing. Generally speaking, in the bankruptcy context, standing requires an "aggrieved person" who will be directly and adversely affected pecuniarily by the bankruptcy court's order.[5]

The IRS argues that a Chapter 7 debtor lacks standing to challenge a claim unless the debtor shows that the disallowance of the claim would create a surplus of assets that the debtor would receive.[6] This is so because, if the estate is not solvent, an objection to a proposed distribution only affects how much each creditor will

---

[3] 11 U.S.C. § 523(a)(1)(A).

[4] 11 U.S.C. § 502(a).

[5] *In re Balanced Plan, Inc.*, 257 B.R. 921, 923 (Bankr. W.D. Mo. 2001). *See also In re Adams*, 424 B.R. 434, 435 (Bankr. N.D. Ill. 2010).

[6] *See Kapp v. Naturelle, Inc.*, 611 F.2d 703, 706-07 and n.4 (8th Cir. 1979) (holding that a debtor has standing to object to a claim when there will be a surplus, and declining to consider whether a debtor may have standing to contest claims under other circumstances); *In re Kieffer-Mickes, Inc.*, 226 B.R. 204, 208 (B.A.P. 8th Cir. 1998) (acknowledging that a surplus resulting from the disallowance of a claim is an exception to the general rule that a debtor lacks standing to object to claims).

receive and may not affect the debtor's rights if the debtor has no chance of getting any of the surplus.[7] Here, after payment of approved fees, the Trustee is holding approximately $30,000 on behalf of the estate. It would appear that there are no other assets to liquidate. After accounting for claims which have already been disallowed, including a significant portion of the secured and priority claims filed by the Missouri Department of Revenue ("MoDOR"), the Claims Register Summary shows total claims of well over $1 million. The IRS' claim totals $480,699.27, and includes $285,211.26 in secured claims, $160,233.04 in unsecured priority claims, and $35,254.97 in general unsecured claims. And, although objections have been sustained to some of its claims, MoDOR still holds some secured and priority claims. In any event, the Debtor appears to concede that, even if the disputed portions of the IRS' claims were to be disallowed, there would be no funds for the Debtor after payment of all other claims. Based on that, the IRS asserts he lacks standing to object to its claim.

However, courts have also held that debtors have standing to object to a claim if the claim will not be discharged.[8] In addition, a debtor may also wish to object to

---

[7] *In re Kieffer-Mickes*, 226 B.R. at 208-09.

[8] *See In re Lona*, 393 B.R. 1, 4 (Bankr. N.D. Cal. 2008) (noting two recognized objections to the general rule that a debtor lacks standing to object to claims: "where (1) disallowance of a claim will produce a surplus for the debtor; or (2) where a claim will not be discharged."). Other courts have held that the existence of a nondischargeable debt

an overstated dischargeable claim whose holder would receive distributions that otherwise would be made to the holder of a nondischargeable claim.[9] In other words, to the extent that a nondischargeable claim is satisfied in some measure by a distribution, it is in the debtor's interest to maximize that distribution so that the debtor will be relieved from some or all of the claim of that creditor which would survive the bankruptcy case.[10] In sum, the allowance or disallowance of a claim may, under certain circumstances, have an adverse effect on the debtor, regardless of whether the debtor stands to directly receive any funds from the estate. In such cases, the debtor has standing to object to such claims.

Here, as stated, it would appear that many of the tax claims asserted by the IRS are nondischargeable, so the Debtor will remain liable as to those. As a result, the Debtor has an interest in which of those claims are allowed and how they will be paid from the estate's funds. Therefore, he has standing to object under § 502(a), despite

---

does not confer standing on a debtor to object to matters of administration of the estate because the effect on the debtor's interest is indirect and granting standing to such debtors interferes with the administration of Chapter 7 cases. *See, e.g., In re Adams*, 424 B.R. 434 (Bankr. N.D. Ill. 2010) (holding that the debtor did not have standing to object to the trustee's proposed sale of estate property, even though a higher price would increase the distribution to a nondischargeable claim holder).

[9] 4 Collier on Bankruptcy ¶ 502.02[2][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[10] *Id.*

the fact that he will receive nothing from the estate even if successful with his objection.

While the Debtor has standing to object to the IRS' claims, that does not necessarily mean that those tax claims should be decided by the Bankruptcy Court. Section 505(a) does authorize the Bankruptcy Court to determine any unpaid tax liability of the Debtor that has not been contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction prior to the commencement of the bankruptcy case.[11] Nevertheless, that authority is not exclusive. The Debtor does not dispute the IRS' contention that both the amount of the claim, and Debtor's liability for the tax debts of the various entities involved, could be determined elsewhere. For that reason, the authority for the Bankruptcy Court to decide tax claims under § 505(a) is discretionary.[12] In deciding whether to exercise discretion under § 505(a)(1), courts have looked to a number of factors, including:

1. the complexity of the tax issue to be decided;
2. the asset and liability structure of the debtor;
3. the length of time required for trial and decision;
4. judicial economy;
5. the burden on the court's docket;
6. prejudice to the debtor; and
7. potential prejudice to the taxing authority responsible for

---

[11] 11 U.S.C. § 505(a)(1); 4 Collier on Bankruptcy ¶ 505.01.

[12] 11 Collier on Bankruptcy ¶ TX5.04[1].

collection from inconsistent judgments.[13]

Here, the disputed liability is for trust fund taxes which likely involve complex tax issues best suited for a tax court or other court familiar with such issues. And, although the Debtor has stated a preference to have the claim adjudicated here, I see no prejudice to the Debtor in having a tax or other appropriate court determine liability, particularly since the estate's funds will go toward payment of secured or priority taxes regardless of whether the disputed quarters are allowed.

Most importantly, however, the IRS asserts that other parties may be liable for the trust fund taxes and, indeed, the Debtor's affidavit attached to his response to the Motion to Dismiss expressly names other people as the responsible parties for some of the quarters assessed as part of the IRS' claim. The IRS says it always seeks to join all potentially responsible persons into the same litigation. The Bankruptcy Appellate Panel has held that bankruptcy courts do not have jurisdiction to adjudicate the tax liabilities of non-debtors.[14] Judicial economy is not served by requiring the IRS to

---

[13] *In re Goins*, 437 B.R. 372, 375 (Bankr. E.D. Mo. 2010) (citations omitted). *See also In re Gilliam*, 2009 WL 4051074 (D. S.C. Sept. 25, 2009) (comparing a motion to abstain under § 505(a) with motions to abstain under 28 U.S.C. § 1334(c)(1)).

[14] *See In re Goins*, 437 B.R. at 375 (citing *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1549 (11th Cir. 1986) (holding that the "jurisdiction of the bankruptcy courts encompasses determinations of the tax liabilities of debtors who file petitions for relief under the bankruptcy laws. It does not, however, extend to the separate liabilities of taxpayers who are not debtors under the Bankruptcy Code."); 11 Collier on Bankruptcy ¶ TX5.04[5] (stating that most courts have limited the § 505(a) jurisdictional grant to

adjudicate the Debtor's liability here and the other potential obligors' liability elsewhere. And, such piecemeal litigation could potentially prejudice the IRS by resulting in inconsistent judgments as to which individuals are responsible for failure to pay trust fund taxes.

I recognize that the Trustee may need to keep the estate open until the IRS' claim has been finally determined elsewhere, particularly since the Missouri Department of Revenue still appears to have some allowed claims of equal priority. However, the alternative would be to either have this Court determine the liability of others beside the Debtor, or to have the individual liability for trust fund taxes determined in Bankruptcy Court as to the Debtor, and elsewhere as to other allegedly responsible persons. Under the circumstances, judicial economy and consistency of result counsel strongly in favor of abstention.

Based on the foregoing, this Court will abstain from adjudicating the IRS' claim against the Debtor. That said, the Debtor is entitled to object to the assessments in the tax court or other appropriate forum, and the dismissal of his objection to the IRS' claim here should not be given *res judicata* or collateral estoppel effect there.

---

determinations of tax liabilities of the debtor and the bankruptcy estate and have refused to use that section to determine tax liabilities of non-debtor parties). *See also Eveleth Mines, L.L.C.*, 318 B.R. 682, 689 (B.A.P. 8th Cir. 2004) (holding that the authority to determine the amount of tax a debtor owes under § 505(a) does not extend to nondebtors).

ACCORDINGLY, the United States' Motion to Dismiss the Debtor's Objection to Claim is GRANTED, WITHOUT PREJUDICE to the Debtor disputing his liability for the assessments in another forum.

                                                /s/ Arthur B. Federman
                                                  Bankruptcy Judge

Date: 5/2/2012